UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CALVIN SMITH, | Civ. No. 13-3994 (KM) (JBC) |
| Plaintiff, | |
| v. | OPINION |
| THE BANK OF NEW YORK MELLON AS SUCCESSOR TRUSTEE UNDER NOVA STAR MORTGAGE FUNDING TRUST, SERIES 2006-3, | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

Calvin Smith, *pro se*, brought this action against The Bank of New York Mellon, as Successor Trustee Under Nova Star Mortgage Funding Trust, Series 2006-3 ("Mellon"). Counts 1 through 4 allege violations of the New Jersey Home Ownership Security Act ("HOSA"); Count 5 alleges a violation of the New Jersey Consumer Fraud Act ("NJCFA"). Now before the Court is Mellon's motion (ECF no. 24) for summary judgment and Smith's cross motion (ECF no. 28) to strike Mellon's Answer.

The evidence fails to raise a material issue of fact as to the viability of Smith's claims, and I grant summary judgment to Mellon. Smith's cross-motion to strike Mellon's answer seems to be an alternative formulation of his opposition to the summary judgment motion, and it too will be denied.

**I. BACKGROUND**

On June 9, 2006, Mr. Smith entered into a refinancing transaction for his home in the amount of $183,750.00. Documents he and his spouse executed included an Adjustable Rate Note, Mortgage, HUD-1, and TILA

1

disclosure. (MSUMF ¶¶ 1, 5, 6 (admitted); *see also* SC Exs. B through F)[1] The mortgage was executed to MERS as nominee for NovaStar Home Mortgage, Inc., and assigned to Nova Star Mortgage, Inc.. (MSUMF ¶¶ 2,3 (admitted)) The mortgage was then assigned to Defendant Mellon. (MSUMF ¶ 4 (admitted))

On September 20, 2011, Smith filed a civil complaint in Superior Court, Essex County, No. L-7660-11 ("2011 Cplt"). (MSUMF ¶ 7 (admitted)) Named as defendants in the 2011 Complaint are "Saxon Mortgage Services, Inc. and Fictitious Party Defendant hereinafter described." That "fictitious party" is described as "unknown mortgagee," and is further described as the party "intended to be design[at]ed by Plaintiff as mortgagee who assigned Saxon Mortgage Services, Inc. to service subject loan." (MSUMF ¶¶ 8, 9, 10 (admitted); *see* 2011 Cplt. ¶¶ 1, 4)

On October 12, 2012, in the 2011 Action, the Hon. Paul J. Vichness, J.S.C., filed an order denying the "Motion of Defendants Saxon Mortgage Services, Inc. ("Saxon") and 'Fictitious Party Defendant' (in actuality, Bank or New York Mellon, as successor trustee under Novastar Mortgage Funding Trust, Series 2006-3 for Summary Judgment." (MSUMF ¶¶ 11, 12 (admitted)) (SC Ex. C, ECF no. 24-3 at 26) The form of Order appears to have been submitted by "Attorneys for Defendants." (*Id.*)

---

[1] The record will be cited as follows:
    2011 Cplt. = Complaint in prior action, ECF no. 24-3 at 18.
    2011 Decision = Oral decision, Feb. 13, 2013, 2011 Action, ECF no. 28-4 at 3
    2013 Cplt. = Complaint in this action, ECF no. 1-3.
    LC = Certification of Sandra Lyew, ECF no. 24-2.
    MSUMF = Mellon Statement of Undisputed Material Facts, ECF no. 24-1
    SC = Certification of Stephanie A. Sgambati, ECF no. 24-3
    Smith Cert. = Certification of Calvin Smith, ECF no. 28-2
    SSUMF = Smith Counter Statement of Undisputed Material Facts, Response to Mellon Statement, and Statement of Disputed Facts, ECF no. 28-3

The case was tried over a three day period from February 11–13, 2013. On April 23, 2013, Hon. Michelle Hollar-Gregory, J.S.C., entered an Order and Judgment in favor of defendant, Saxon Mortgage Services, Inc., and against the plaintiff, Calvin Smith, on all claims contained in the plaintiff's civil complaint initiating this matter." (SC Ex. D, ECF no. 24-3 at 28)

Smith disputes the scope of this judgment. Mellon, he says, was not present for the trial, and the judgment signified only that the mortgage owner was not present. In support, he attaches transcript excerpts of the Judge's oral decision, stating, *inter alia,*

> Thought the claims plaintiff alleges may have some merit, they are of no moment here because the plaintiff has not met his burden of proof. The proofs are lacking. The plaintiff has not met the burden of proof as to whether the defendant is the — the owner of the mortgage and whether the acts complained of can be attributed to the named defendant, Saxon.
>
> And given that, those facts, though the Court may understand and is not insensitive to the concerns and the claims raised by the plaintiff, cannot, as a matter of law, decide in the plaintiff's favor. Therefore, judgment is for defendant.
>
> I should also note that the plaintiff in his complaint identified a fictitious party, but it's incumbent upon the plaintiff, if there is a named fictitious defendant, that discovery be taken and that you take steps to identify or secure the identity of any of these fictitious parties.
>
> There was no argument or any facts that were presente to the Court in — in this regard either. So, their — judgment entered in favor the defendant.

(2011 Decision, delivered Feb. 13, 2013)

Smith states that there was never any testimony; it was a simple case of dismissal because he had not named the proper party. Smith explains that, having realized Saxon was not the proper party, he sought guidance about what to do. (Smith Cert. ¶¶5–7)

What he did was refile his action, this time naming Mellon as defendant, in Superior Court, Essex County, under Docket no. ESX-L-003709-13. on May

29, 2013. (2013 Cplt.) Mellon removed the case to federal court, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332(a).

The 2013 Complaint, now before this Court, alleges that the original Mortgage Note and Adjustable Rate Rider provide for an initial rate of 11.65%. The maximum upward adjustment was to be 3% at the end of the first year, and 1% each year thereafter, to a maximum rate of 18.65%. (2013 Cplt. ¶¶ 8–10) These provisions allegedly were not disclosed in the Truth in Lending disclosure document. (*Id.* ¶¶ 11–13)

The 2013 Complaint also alleges that this was a "high-rate mortgage" within the meaning of HOEPA, 15 U.S.C. § 1602aa(1)(B). This allegation is based on the May 15, 2006, Daily Treasury Long-Term Rate ("DTLTR") of 5.26%, and a loan interest rate that exceeded that DTLTR by more than 8%. (2013 Cplt. ¶¶ 14–15)

The 2013 Complaint asserts four claims under HOSA, N.J. Stat. Ann. § 46:10B-22:

> Count 1 – Direct financing of points and fees in the amount of $6300, which is in excess of 2% of the total loan amount of $183,750.00.
>
> Count 2 – Financing points and fees without certification of counseling from a credit counselor.
>
> Count 3 – Failure to tell plaintiff to comparison shop for lower rates and fees.
>
> Count 4 – Total of six $20 breach fees, in addition to 5% late charge.

Count 5 cites the NJCFA, without additional allegations.

## II.   DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000).

4

In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine

whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

### B.   HOSA

New Jersey's Legislature enacted HOSA, N.J. Stat. Ann. § 46:10B-22 *et seq.*, in 2003 to curb abusive mortgage lending practices. The Legislature particularly targeted "the making of loans that are equity-based, rather than income-based," in that they involve "the financing of high points and fees." N.J.S.A. 46:10B–23(a).

To address these abuses, HOSA has listed a number of "prohibited practices" including the following:

> a. No creditor making a home loan shall finance, directly or indirectly, any credit life, credit disability, credit unemployment or credit property insurance, or any other life or health insurance, or any payments directly or indirectly for any debt cancellation or suspension agreement or contract, except that insurance premiums or debt cancellation or suspension fees calculated and paid on a monthly basis shall not be considered financed by the creditor.
>
> b. [Deleted by amendment, P.L.2004, c. 84].
>
> c. No creditor shall recommend or encourage default on an existing loan or other debt prior to and in connection with the closing or planned closing of a home loan that refinances all or any portion of that existing loan or debt.
>
> d. No creditor shall charge a late payment fee in relation to a home loan except according to the following rules:
>
>> (1) The late payment fee may not be in excess of 5% of the amount of the payment past due.
>>
>> (2) The fee may only be assessed by a payment past due for 15 days or more.
>>
>> (3) The fee may not be charged more than once with respect to a single late payment. If a late payment fee is deducted from a payment made on the loan, and such deduction causes a subsequent default on a subsequent payment, no late payment fee may be imposed for such default. If a late payment fee has been once imposed with respect to a

> particular late payment, no such fee shall be imposed with respect to any future payment which would have been timely and sufficient, but for the previous default.
>
> (4) No fee shall be charged unless the creditor notifies the borrower within 45 days following the date the payment was due that a late payment fee has been imposed for a particular late payment. No late payment fee may be collected from any borrower if the borrower informs the creditor that nonpayment of an installment is in dispute and presents proof of payment within 45 days of receipt of the creditor's notice of the late fee.
>
> (5) The creditor shall treat each and every payment as posted on the same date as it was received by the creditor, servicer, creditor's agent, or at the address provided to the borrower by the creditor, servicer, or the creditor's agent for making payments.
>
> e. No home loan shall contain a provision that permits the creditor, in its sole discretion, to accelerate the indebtedness. This provision does not prohibit acceleration of the loan in good faith due to the borrower's failure to abide by the material terms of the loan.
>
> f. No creditor shall charge a fee for informing or transmitting to any person the balance due to pay off a home loan or to provide a release upon prepayment. Payoff balances shall be provided within seven business days after the request.

N.J.S.A. 46:10B–25. Those Section 25 prohibitions apply to all home loans.

HOSA places additional restrictions that apply, not to all home loans, but only to certain loans designated as "high-cost home loans."

> "High-cost home loan" means a home loan for which the principal amount of the loan does not exceed $350,000, which amount shall be adjusted annually to include the last published increase of the housing component of the national Consumer Price Index, New York-Northeastern New Jersey Region, in which the terms of the loan meet or exceed one or more of the thresholds as defined in this section.

N.J. Stat. Ann. § 46:10B–24 (definitions).

> The "thresholds" defining a high-cost loan are as follows:
>
> "Threshold" means any one of the following two items, as defined:
>
> (1) "Rate threshold" means the annual percentage rate of the loan at the time the loan is consummated such that the loan is considered a "mortgage" under section 152 of the federal "Home

7

Ownership and Equity Protection Act of 1994," Pub.L. 103-325 (15 U.S.C. s.1602(aa)), and the regulations promulgated by the Federal Reserve Board, including 12 C. F.R. s.226.32, without regard to whether the loan transaction is or may be a "residential mortgage transaction," as defined in 12 C.F.R. s.226.2(a)(24).

(2) "Total points and fees threshold" means that the total points and fees payable by the borrower at or before the loan closing, excluding either a conventional prepayment penalty or up to two bona fide discount points, exceed:

> (a) 4.5% of the total loan amount if the total loan amount is $40,000 or more; or

> (b) the lesser of 6% of the total loan amount or $1,000, if the total loan amount is less than $20,000, and 6% if the total loan amount is $20,000 or more but less than $40,000.

"Total loan amount" means the principal of the loan minus those points and fees as defined in this section that are included in the principal amount of the loan. ...

N.J. Stat. Ann. § 46:10B–24 (definitions) [bracket interpolation added].

If a loan meets the definition of a high-cost home loan, HOSA imposes the following additional limitations and prohibited practices:

> a. No high-cost home loan shall contain a scheduled payment that is more than twice as large as the average of earlier scheduled payments. This provision shall not apply when the payment schedule is adjusted to the seasonal or irregular income of the borrower.

> b. No high-cost home loan shall include payment terms under which the outstanding principal balance will increase at any time over the course of the loan because the regular periodic payments do not cover the full amount of interest due.

> c. No high-cost home loan shall contain a provision that increases the interest rate after default. This provision shall not apply to interest rate changes in a variable rate loan otherwise consistent with the provisions of the loan documents, provided the change in the interest rate is not triggered by the event of default or the acceleration of the indebtedness.

> d. No high-cost home loan shall include terms under which more than two periodic payments required under the loan are consolidated and paid in advance from the loan proceeds provided to the borrower.

e. Without regard to whether a borrower is acting individually or on behalf of others similarly situated, any provision of a high-cost home loan agreement that allows a party to require a borrower to assert any claim or defense in a forum that is less convenient, more costly, or more dilatory for the resolution of a dispute than a judicial forum established in this State if the borrower may otherwise properly bring a claim or defense or limits in any way any claim or defense the borrower may have is unconscionable and void.

f. A creditor shall not make a high-cost home loan unless the creditor has given the following notice, or substantially similar notice, in writing, to the borrower, acknowledged in writing and signed by the borrower not later than the time the notice is required under the notice provision contained in 12 C.F.R. s.226.31(c).

> NOTICE TO BORROWER
>
> YOU SHOULD BE AWARE THAT YOU MIGHT BE ABLE TO OBTAIN A LOAN AT A LOWER COST. YOU SHOULD SHOP AROUND AND COMPARE LOAN RATES AND FEES. MORTGAGE LOAN RATES AND CLOSING COSTS AND FEES VARY BASED ON MANY FACTORS, INCLUDING YOUR PARTICULAR CREDIT AND FINANCIAL CIRCUMSTANCES, YOUR EMPLOYMENT HISTORY, THE LOAN-TO-VALUE REQUESTED AND THE TYPE OF PROPERTY THAT WILL SECURE YOUR LOAN. THE LOAN RATE AND FEES COULD ALSO VARY BASED ON WHICH CREDITOR OR BROKER YOU SELECT.
>
> IF YOU ACCEPT THE TERMS OF THIS LOAN, THE CREDITOR WILL HAVE A MORTGAGE LIEN ON YOUR HOME. YOU COULD LOSE YOUR HOME AND ANY MONEY YOU PUT INTO IT IF YOU DO NOT MEET YOUR PAYMENT OBLIGATIONS UNDER THE LOAN.
>
> YOU SHOULD CONSULT AN ATTORNEY-AT-LAW AND A QUALIFIED INDEPENDENT CREDIT COUNSELOR OR OTHER EXPERIENCED FINANCIAL ADVISOR REGARDING THE RATE, FEES AND PROVISIONS OF THIS MORTGAGE LOAN BEFORE YOU PROCEED. A LIST OF QUALIFIED COUNSELORS IS AVAILABLE BY CONTACTING THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE.
>
> YOU ARE NOT REQUIRED TO COMPLETE THIS LOAN AGREEMENT MERELY BECAUSE YOU HAVE RECEIVED THIS DISCLOSURE OR HAVE SIGNED A LOAN APPLICATION.

> REMEMBER, PROPERTY TAXES AND HOMEOWNER'S INSURANCE ARE YOUR RESPONSIBILITY. NOT ALL CREDITORS PROVIDE ESCROW SERVICES FOR THESE PAYMENTS. YOU SHOULD ASK YOUR CREDITOR ABOUT THESE SERVICES.
>
> ALSO, YOUR PAYMENTS ON EXISTING DEBTS CONTRIBUTE TO YOUR CREDIT RATINGS. YOU SHOULD NOT ACCEPT ANY ADVICE TO IGNORE YOUR REGULAR PAYMENTS TO YOUR EXISTING CREDITORS.

g. A creditor shall not make a high-cost home loan to a borrower who finances points and fees in connection with a high-cost home loan without first receiving certification from a third-party nonprofit credit counselor, approved by the United States Department of Housing and Urban Development and the Department of Banking and Insurance, that the borrower has received counseling on the advisability of the loan transaction or completing another substantial requirement developed by the department.

h. A creditor shall not pay a contractor under a home-improvement contract from the proceeds of a high-cost home loan, unless the instrument is payable to the borrower or jointly to the borrower and the contractor, or, at the election of the borrower, through a third-party escrow agent in accordance with terms established in a written agreement signed by the borrower, the creditor, and the contractor prior to the disbursement.

i. A creditor shall not charge a borrower any fees or other charges to modify, renew, extend, or amend a high-cost home loan or to defer any payment due under the terms of a high-cost home loan.

j. A creditor shall not charge a borrower points and fees in connection with a high-cost home loan if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan held by the same creditor as note holder.

k. Notwithstanding any other law to the contrary, a creditor making a high-cost home loan that has the legal right to foreclose shall use the judicial foreclosure procedures of this State so long as the property securing the loan is located in this State.

l. No creditor making a high-cost home loan shall directly or indirectly finance points and fees in excess of 2% of the total loan amount.

N.J. Stat. Ann. § 46:10B-26.

### C. Analysis

#### 1. "High-Cost Home Loan" (Counts 1, 2, and 3)

Counts 1, 2, and 3, though they do not carefully cite the statutory sections of HOSA on which they rely, clearly invoke the restrictions and limitations that HOSA imposes on "high-cost home loans." *See* N.J. Stat. Ann. § 46:10B-26. Count 1 alleges direct financing of points and fees in the amount of $6300, which is "in excess of 2% of the total loan amount," *see* N.J. Stat. Ann. § 46:10B-26(l); Count 2 alleges financing points and fees without certification of counseling from a credit counselor, *see* N.J. Stat. Ann. § 46:10B-26(g); and Count 3 alleges failure to tell plaintiff to comparison shop for lower rates and fees, an apparent reference to the required NOTICE TO BORROWER, *see* N.J. Stat. Ann. § 46:10B-26(f).

The threshold issue, then, is whether Smith's loan is a "high-cost home loan." Based on the undisputed evidence, I find that it is not, and that the restrictions of N.J. Stat. Ann. § 46:10B-26 therefore do not apply.

Section 10B-24 defines a "high-cost home loan." It is quoted in full above, but its test has been summarized as follows:

> To qualify as a "high-cost home loan" under the HOSA the principal amount of the home loan
>
> [1] must not exceed a certain amount, and
>
> [2] "the terms of the loan [must] meet or exceed one or more of the thresholds as defined in this section." N.J.S.A. § 46:10B-24.

*Longo v. First Nat. Mortgage Sources*, No. CIVA 07-4372 MLC, 2009 WL 313334, at *4 (D.N.J. Feb. 6, 2009), *opinion reinstated in part*, No. CIV. A. 07-4372 MLC, 2010 WL 415330 (D.N.J. Jan. 29, 2010) (numbering and line breaks added for clarity).

The Smith loan obviously meets the first test. The "certain amount" that a high-cost loan cannot exceed, initially set at $350,000, is adjusted annually by the New Jersey Department of Banking and Insurance. In 2006 that maximum amount was $383,682.60. (SC Ex. H, ECF no. 24-3 at 56 (Bulletin

11

05-24 of NJ Dep't of Banking and Insurance)) The principal amount of Smith's loan, consummated in 2006, was $183,750, well beneath that limit.

The second test requires that the loan "meet or exceed one of the thresholds" defined in N.J. Stat. Ann. § 46:10B-24, quoted at pp. 7–8, *supra.*

The first threshold is the "Rate Threshold." That means that the annual percentage rate "at the time the loan is consummated" must exceed the Home Ownership and Equity Protection Act ("HOEPA") threshold. In 2006, that Rate Threshold (*i.e.*, the Daily Treasury Long-Term Rate plus 8%) equaled at least 13.21%.[2] The initial interest rate for Smith's loan was 11.65%, and the APR was 12.671%.[3]

The second threshold is the "total points and fees threshold." For a loan exceeding $40,000, like this one, that means that the "total points and fees payable by the borrower at or before the loan closing, excluding either a conventional prepayment penalty or up to two bona fide discount points," exceed 4.5% of the total loan amount. N.J. Stat. Ann. § 46:10B-24, quoted at pp. 7–8, *supra* (Mellon points out that the threshold was 5% in 2006, *see* SC Ex. G, ECF no. 24-3 at 47, but it makes no difference to the result.)

---

[2] *See* N.J. Stat. Ann. § 46:10B-24; 12 C.F.R. § 226.32. Smith states, and Mellon admits, that the Daily Treasury Long-Term Rate on May 15, 2006, was 5.26%. It is possible to quibble, as defendant does, over whether the applicable rate is the May rate or the one for the preceding month, but it makes no difference to the result. The Treasury Department's online historical data show that the Daily Treasury Long-term Rate for May 15, 2006, was 5.37%; for April 17, 2006, it was 5.21%. https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=longtermrateYear&year=2006. Elsewhere, Mellon cites a rate for 30-year Treasuries of 5.08%. Again, it makes no difference; the initial APR would remain well below the threshold.

[3] *See* LC Ex. E, ECF no. 24-2 at 36 (TILA disclosure of APR). The applicable rate is the one "at the time the loan is consummated." N.J. Stat. Ann. § 46:10B-24 (definition of "Rate threshold").

Smith objects that the APR escalated, but that is an inevitable consequence of the adjustable interest rate, which was fully disclosed. The interest rate, which is lower than the APR, would never be lower than the initial rate of 11.65%. At the first semiannual change date, it could be increased to a maximum of 14.650% (*i.e.*, an increase of 3%). Thereafter, increases or decreases on each change date could not exceed 1%. The interest rate could never exceed 18.650%. (LC Ex. A, ECF no. 24-2 at 6 (Note ¶ 4))

The "total loan amount" (principal minus points and fees) is $183,750 – $6300, or $177,450. Smith alleges that the points and fees charged for his loan totaled $6300. That $6300 points and fees figure amounts to about 3.55% of the total loan amount. It therefore does not surpass the 4.5% "total points and fees threshold" that would make this a "high-cost home loan."

Because this loan meets neither threshold, it is not a high-cost home loan. Because it is not a high-cost home loan, it is not subject to the strictures of N.J. Stat. Ann. § 46:10B-26. Counts 1, 2, and 3 all allege violations of § 46:10B-26, which does not apply to this loan as a matter of law.

Because Mellon is entitled to judgment as a matter of law, I will grant Mellon's motion for summary judgment as to Counts 1, 2, and 3.

### 2. $ 20 Breach fees (Count 4)

Count 4 alleges a violation of the HOPA section 25 prohibited practices; these apply to all home loans, not just to high-cost loans. According to the Complaint, Smith was charged the following "breach fees," which were allegedly illegal under HOPA:

| Date | Amount of Breach Fee |
|---|---|
| 1/21/2008 | $20 |
| 2/18/2008 | $20 |
| 6/3/2008 | $20 |
| 7/15/2008 | $20 x 3 = $60 |
|  | Total = $120 |

(Cplt. ¶¶ 22-26; see SSUMF, ECF no. 28-5 at 26–27 (account history statements)

The breach fees, says Smith, were illegal because they were charged in addition to a 5% late charge. The reference appears to be to N.J. Stat. Ann. § 46:10B-25(d)(1):

> d. No creditor shall charge a late payment fee in relation to a home
> loan except according to the following rules:

> (1) The late payment fee may not be in excess of 5% of the amount of the payment past due.

There is no evidence that these "breach fees" were late payment fees. That three such fees were incurred in July 2008 tends to suggest that they were not, but it is simply impossible to tell.

Smith has not met his burden of production to create a material issue of fact as to this claim. Mellon's motion for summary judgment is granted as to Count 4.

### 3. NJCFA

Count 5 alleges a violation of the New Jersey Consumer Fraud Act. "To state a claim under the CFA, a plaintiff must allege: '(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the Plaintiffs' ascertainable loss.'" *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360 (D.N.J. 2015) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir.2007) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 23–24, 647 A.2d 454 (1994)).

This NJCFA claim fails as to the first element, "unlawful conduct." This count of the Complaint alleges no additional facts, but simply incorporates the earlier allegations of the Complaint. At his deposition, Smith acknowledged that this fraud claim was based on the HOPA violations alleged in Counts 1–4. (*See* SC Ex. E, ECF no. 24-3 at 34–35) So it stands or falls with the HOPA claims, as to which I have already granted summary judgment to the defendant. Because the HOPA claims are inadequate in their own right, they cannot furnish the "unlawful conduct" that may be the basis of a NJCFA claim.

As to Count 5, then, summary judgment is granted to Mellon.

### 4. Res Judicata

Mellon asserts that all the claims in this action were extinguished by the judgment in the 2011 action. I found enough ambiguity in the parties and

claims decided there to forgo this ground, see pp. 2-4, and consider Smith's claims on the merits.

### III. CONCLUSION

For the reasons set forth above, Mellon's motion for summary judgment is GRANTED. Smith's cross-motion to strike Mellon's Answer, asserted as part of his opposition to Mellon's summary judgment motion, is DENIED. An appropriate Order follows.

Dated: March 18, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.